# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GAIL BAIKIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10 C 6022 |
| ) | |
| COOK COUNTY SHERIFF'S DEPARTMENT ) | |
| OF CORRECTIONS, Cook County Sheriff ) | |
| THOMAS DART, in his official capacity, ) | |
| and COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Gail Baikie has sued her former employer, the Cook County Sheriff's Department of Corrections (DOC), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Baikie claims in count one of her complaint that the DOC discriminated against her because of her race (Caucasian) and claims in count two that the DOC violated her due process rights by preventing her from challenging her termination. Baikie has also sued Cook County Sheriff Thomas Dart based on his responsibility for the DOC's operations. Finally, in count three of her complaint, Baikie has asserted a claim for indemnification against Cook County. Defendants have moved for summary judgment. For the reasons stated below, the Court grants the motion in part and denies it in part.

## Facts

On a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in that party's

favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). The following facts are taken from the parties' memoranda of law and statements of uncontested facts.

Baikie, a Caucasian woman, was hired by the DOC as a correctional officer on July 23, 2007. Upon hiring, Baikie was subject to a year-long probationary period, which was scheduled to end on July 23, 2008.

Baikie dated James Anderson on and off between 2006 and 2008. Anderson has been convicted of a felony and a misdemeanor and has been arrested several other times. Baikie did not know about Anderson's criminal history until after the incidents at issue in this case.[1] On July 16, 2008, Anderson was living at Baikie's home in Chicago. On that morning, Baikie went to a store near her home. She received a call on her cell phone from Anderson, who stated that he was going to "take [her] gun and get [her] fired." Baikie Dep. at 8:1-2.

Baikie left the store and flagged down a passing police officer, who took her back to her apartment. Another officer arrived, and the three went inside, but Anderson was not there. Baikie went to the electronic safe where she kept her service revolver, finding it closed and locked. When she entered the code and opened the safe, however, the revolver was not inside. She called the sheriff's department to report the missing weapon. After searching for several hours, Baikie received a call from

---

[1] In response to this factual assertion and most others from Baikie's Local Rule 56.1 Statement of Facts, defendants state that they do "not deny that Plaintiff has supported the asserted facts in paragraph 4 with admissible evidence that supports the asserted facts, but den[y] that the asserted fact is a material fact that requires denial of summary judgment in favor of Defendant." Defs.' Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 4. The Court construes these responses as admissions for present purposes. *See* N.D. Ill. L.R. 56.1 ("All material facts . . . will be deemed admitted unless controverted by the statement of the moving party.").

Anderson's aunt, who told her that the revolver was hidden under the stairway in Baikie's apartment building. Baikie and the officers found the revolver there.

The next morning, July 17, Baikie went to the local police station and filed for an order of protection against Anderson. She also prepared a memorandum describing the events and submitted it to the Cook County Sheriff's Office of Professional Review (OPR), which handles all disciplinary issues for the DOC. George Turner, the director of OPR, prepared a "complaint register" against Baikie that same day. The Court draws the following description of the OPR disciplinary process from Baikie's statement of uncontested facts, this portion of which defendants have admitted in full:

> A typical OPR investigation begins when a complainant fills out a Complaint Register. After a Complaint Register is filed it goes to the director of OPR, who will review the allegations of misconduct and sign off on the complaint if it warrants an investigation. The complaint is then sent to the executive director of OPR, who transfers the complaint to the appropriate OPR unit and assigns an investigator.
>
> After receiving a complaint assignment, an OPR investigator will conduct a formal investigation into the allegations of misconduct by interviewing witnesses and collecting documents. When the investigation is completed, the investigator prepares a report. If the findings of the report require disciplinary action to be taken against an officer, then the executive director of OPR will make a corresponding recommendation for discipline. The executive director of OPR will make a corresponding recommendation for discipline. The executive director will not make a recommendation for discipline against an officer until after the OPR investigation is completed.
>
> At the time of this incident, Henry Barsch was the assistant executive director of OPR. Assistant executive directors directly report to the executive director and can also make recommendations for discipline at the completion of an OPR investigation. Once OPR makes a recommendation, the report goes through a process called command channel review where various department heads, including the executive director of DOC, the undersheriff, and the sheriff, all decide whether to concur or not to concur with the investigation and its recommendations. The undersheriff only typically gets involved in an OPR investigation after the investigation is completed.

Pl.'s L.R. 56.1 Stmt. ¶¶ 8-12.

On July 21, Barsch prepared a report of the incident in which he recommended terminating Baikie's employment. He delivered the report to Undersheriff Zelda Whittler, who is responsible for final review of all complaints regarding allegations of misconduct. If the undersheriff concurs with an OPR recommendation, the recommendation typically goes into effect and cannot be overruled. Defendants admit that it is "not the usual practice of executive directors to make recommendations for discipline" in an initial report. *Id*. ¶ 19. Rather, disciplinary recommendations are more typically made after the completion of an OPR investigation and are forwarded through the command channel review process described in the previous paragraph. *Id*.

Barsch's report concluded with the following paragraph:

Based upon the aforementioned facts and evidence, I submit that PCO Baikie failed to properly safeguard her weapon. The weapon may have been placed in a safe; however, Baikie's boyfriend, a convicted felon with an extensive record, was able to gain access to it. As such, her total conduct surrounding this matter has casted [sic] serious discredit upon the Sheriff's Department. It is requested that her probationary status be terminated as unsatisfactory.

Def. Ex. 7 at 2. After reading the report, Whittler requested further documentation from Barsch regarding the condition of the safe. Barsch supplied a police report indicating that an officer on the scene had observed the safe and stated that because it was an electronic safe that did not appear to have been tampered with, it seemed that it had either been left unlocked or opened with the combination. Whittler testified that upon receiving this information, she told Barsch that she concurred with his recommendation, and that Barsch subsequently passed this along to Katie Hullihan, the director of personnel. Whittler Dep. at 27:14-17.

4

Baikie testified that the following day, July 22, she met with Hullihan. She testified that Hullihan told her that she had violated the department's general orders regarding weapon security and would therefore be terminated. Hullihan first asked Baikie to resign. After Baikie refused, Hullihan told Baikie that she was fired and asked her to hand in her badge and identification. The parties agree that Baikie did not work for the DOC after July 22, 2008.

Although Baikie had already been terminated, OPR began an investigation into the allegations against her on July 25, 2008. Baikie was formally accused of violating the following general orders (G.O) of the sheriff's department: association with a known felon (G.O. 3.8, section III D-6); failing to properly secure a weapon (G.O. 3.14, section III 1-2(a)); making a false report (G.O. 4.1, section III A-18), and bringing discredit upon the department (G.O. 4.1, section III A-17). The report produced by the investigator on August 6, 2008, indicated that OPR had sustained the latter three allegations. Ed Dyner, the director of OPR, signed the report and indicated that he recommended Baikie's termination. Approximately one month later, Whittler signed a document indicating that she concurred with Dyner's recommendation.[2]

## Discussion

Summary judgment is proper when the moving party shows that there is no genuine dispute over any material fact and that they are entitled to judgment as a

---

[2] Defendants object to the document indicating Whittler's concurrence with Dyner's recommendation on the ground that Baikie has not authenticated it. Although the Court is inclined to consider the document because it appears likely that Baikie would be able to prove its admissibility at trial either through Whittler's testimony or as a business or public record, the document is not necessary for the Court's decision regarding defendants' motion.

5

matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when, based on the record, a reasonable fact finder could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**A.  Discrimination claim**

Because Baikie has not provided any direct evidence of discrimination based on her race, she must prove her claim through the burden-shifting method that the Supreme Court established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* approach, a plaintiff typically establishes a *prima facie* case of discrimination by showing that she is a member of a protected class; was performing her job satisfactorily; suffered an adverse employment action; and similarly-situated employees outside of her protected class were treated more favorably. *Antonetti v. Abbott Labs.,* 563 F.3d 587, 591 (7th Cir. 2009); *Goodwin v. Bd. of Trs. of the Univ. of Ill.*, 442 F.3d 611, 617 (7th Cir. 2006). In "reverse discrimination" cases like Baikie's, where the plaintiff claims discrimination based on membership in a group not

6

historically subjected to discrimination, she must show "background circumstances that demonstrate that a particular employer has a reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand" in lieu of demonstrating that she is a member of a protected class. *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003) (internal quotation marks and citation omitted).

If Baikie establish her *prima facie* case, the burden then shifts to defendants to provide a legitimate, nondiscriminatory reason for the actions claimed to be discriminatory. *McDonnell Douglas Corp.*, 411 U.S. at 802. If defendants do this, Baikie must then prove that the DOC's stated reasons were a pretext for discrimination. *Id.* at 804; *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 559 n.2 (7th Cir. 2004).

1. ***Prima facie* case**

Baikie has not argued that the DOC has a "reason or inclination" to discriminate against whites and focuses instead on showing that there are "fishy" circumstances. *See Phelan*, 347 F.3d at 684. She cites three matters. The first is that she was a white woman fired by a black woman. Although Whittler testified that she was not aware of Baikie's race and does not take race into account, Baikie has pointed out that the paperwork Whittler reviewed reflected Baikie's race. A reasonable jury could conclude from this that Whittler was aware that Baikie is white. Although this certainly is not enough on its own to suggest fishy circumstances, it can be a piece of that puzzle – particularly given Whittler's denial of awareness of Baikie's race. *See id.* at 685 (noting that the fact that both plaintiff and superiors were white contributed to a finding of lack

7

of fishiness).

In addition, Whittler fired Baikie one day before the end of her probationary period and six days before OPR began its official investigation. Defendants admit that Baikie would have had additional procedural protections if she had become a non-probationary employee and, more importantly, that it was atypical for an employee to be terminated before an investigation had reached a conclusion. Baikie also testified that she was pressured to resign immediately before being fired. Although this evidence does not expressly implicate race, a reasonable jury could conclude that the unusual procedures, particularly the atypical timing, are sufficiently "fishy" to provide the requisite showing on the first element of the *prima facie* case.[3] *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 455 (7th Cir. 1999) (noting that "fishy" circumstances might include an employer "depart[ing] from the usual procedures in an unprecedented fashion") (internal quotation marks and citation omitted); *cf. Farr v. St. Francis Hosp. and Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009) (citing factors including "a lack of suspicious timing" and the employer's choice to proceed with a full investigation of disciplinary charge in finding that circumstances were not "fishy").

Defendants do not contest that Baikie's termination constituted an adverse employment action. And although the parties dispute whether Baikie was meeting the DOC's legitimate expectations, the Court need not resolve their disagreement, because "in claims of discriminatory discipline such as this one, the second and fourth prongs of

---

[3]Defendants argue that because Barsch, not Whittler, wrote the report about Baikie, there is nothing suspicious about Whittler's timing. A reasonable jury could infer, however, that Whittler's choice to concur with Barsch's recommendation before an investigation was complete was itself atypical and therefore suspicious.

*McDonnell Douglas* merge." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008) (internal quotation marks and citation omitted). The Court therefore proceeds to the fourth element of the *prima facie* case and considers whether Baikie has provided evidence that she "received dissimilar – and more harsh – punishment than that received by a similarly situated employee who was outside the protected class." *Id*. For the purposes of this inquiry, a similarly situated employee "need not be identical, but the plaintiff must show that the other employee dealt with the same supervisor, was subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or the employer's treatment of [her]." *Id*.

Baikie has described the cases of five African American DOC officers who were accused of leaving a weapon unsecured but were disciplined less harshly. Baikie claims that Whittler had the opportunity to review all five cases and either concurred with, or made recommendations for, sanctions less severe than termination. The Court notes that because Whittler is the relevant decision maker for purposes of this analysis, the information available to Whittler at the time she made a decision about each employee is the relevant material for comparison. A reasonable jury could infer from the information in Barsch's report that Whittler would have understood that Baikie was accused of violating G.O. 3.14 (failure to secure a weapon) and G.O. 3.8 (association with a known felon). There was no indication in Barsch's report that Baikie would also be accused of making a false report.

Defendants argue that two of the officers Baikie has referenced – Kimtrina McClelland and Gail Malone – are not comparable to Baikie for various reasons. These

9

include the facts that OPR determined the officers had not broken any rules and that, in each case, Whittler did not weigh in until after OPR completed its investigation. The Court need not decide whether these employees were similarly situated to Baikie, because two other officers who were treated less severely than she was reasonably could be found similarly situated.

Of the three remaining officers Baikie has referenced, the first is Andrea Parker. In 2007, Parker left her weapon unsecured in the glove compartment in her car. She then left her grandson alone in the car while she went inside a building. He found the gun and discharged it, resulting in his death. OPR charged Parker for failure to secure her weapon in violation of G.O. 3.14. After an investigation sustained these allegations, OPR recommended that Parker receive a written reprimand. Whittler recommended that the penalty be increased to a 29-day suspension. Parker was also charged with criminally reckless conduct.

Defendants argue that because Whittler recommended a suspension rather than a written reprimand, she "substantially increased" the penalty, meaning that Parker's treatment was not meaningfully distinguishable from Baikie's. Defs.' Reply at 9. The Court disagrees, as could a reasonable jury. Termination is a much more severe punishment than suspension. Whittler believed that a 29-day suspension was "sufficient discipline" for Parker's violation of G.O. 3.14, Whittler Dep. at 60:23-24, but she determined that Baikie's violation of the same rule justified her termination. Although Whittler may have determined that Baikie's violation was especially egregious because she was alleged to have left her weapon unsecured around a known felon, Parker's violation also came with additional indicia of severity: it resulted in the death of

10

a child and criminal charges against Parker.

The similarly situated inquiry is "not an unyielding, inflexible requirement that requires near one-to-one mapping between employees – distinctions can always be found in . . . the nature of the alleged transgressions." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). "Comparable seriousness may be shown by pointing to a violation of the same company rule," *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 689 (7th Cir. 2007), although "[i]dentical rule violations [are] not dispositive of similarity." *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007). The Court concludes that a reasonable jury could find that there are "enough common features between [Baikie and Parker] to allow a meaningful comparison" and that the "distinctions" between them are not "so significant that they render the comparison effectively useless." *Humphries*, 474 F.3d at 405. There is thus evidence from which a reasonable jury could find that Baikie "received dissimilar – and more harsh – punishment than that received by [Parker,] a similarly situated employee" of a different race. *See Caskey*, 535 F.3d at 592.

Baikie also argues that Toya Hairston is comparable but was treated less severely. Hairston left her weapon, which she had separated from its magazine, in a locked case inside a duffel bag in the trunk of her car. Someone broke into her car and stole the bag. Hairston was charged with a failure to secure her weapon under G.O. 3.14. After an investigation sustained the charges, the investigator recommended a 29-day suspension. Whittler concurred with an alternate recommendation, made by the director of OPR, for a suspension of 15 days. Whittler testified that she believed that

11

Hairston's act of leaving the weapon in the car warranted some degree of discipline but that the separation of the gun from its magazine and its placement in a locked case distinguished Hairston's offense from Baikie's.  Whittler Dep. at 72:2-16.

Defendants argue that these factors render Hairston non-comparable to Baikie, who allegedly left her weapon completely unlocked or provided Anderson with the combination to her safe.  When there are differences between employees, "the fundamental issue remains whether such distinctions are so significant that they render the comparison effectively useless."  *Humphries*, 474 F.3d at 405.  "[A]n employee need not show complete identity in comparing [herself] to the better treated employee, but [she] must show substantial similarity."  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000).  Although the situations of Hairston and Baikie are somewhat different, a reasonable jury nonetheless could find that the two officers' alleged conduct was substantially similar.  Both Hairston and Baikie were deemed to have violated G.O. 3.14 in a manner that resulted in the theft of their weapons.  In Hairston's case, Whittler imposed the dramatically less severe penalty of a two-week suspension and also concurred with a recommendation to reduce the severity of the sanction that was originally suggested, despite the fact that Hairston had left the weapon in a car – an "aggravating circumstance."  Whittler Dep. at 69:23.  A reasonable jury could conclude that Hairston was similarly situated to Baikie but that she received significantly less severe punishment for a comparable offense.

The final officer whom Baikie identifies is LaTonya Ruffin.  Baikie has described two incidents involving Ruffin and an allegedly unsecured or stolen weapon.  The Court agrees with defendants that one of the incidents cannot serve as the basis for a

12

comparison with Baikie because the current record contains no evidence that Whittler was involved in decision making about discipline. The other incident appears that it might be relevant, but there are only two bits of evidence regarding the factual circumstances: the deposition of Timothy Parker, Baikie's union steward, relaying what he heard from Ruffin about the incident, and the complaint from a separate lawsuit that Ruffin has filed in this district. The Court agrees with defendants that this evidence, at least in its current form, is hearsay and therefore may not be considered on summary judgment. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Therefore, for purposes of this motion, Baikie has failed to present evidence from which a reasonable jury could conclude that Ruffin was a similarly situated employee.

For purposes of the similarly situated inquiry, however, even "[a] single comparator will do; numerosity is not required." *Humphries*, 474 F.3d at 406-07. Because Baikie has supplied evidence that would allow a reasonable jury to conclude that at least Parker and Hairston were similarly situated but were treated more favorably, she has made the requisite showing to establish her *prima facie* case.

2. **Pretext**

Baikie does not dispute that the reason defendants have put forth for her termination – Whittler's belief that she had violated the rule – was legitimate and nondiscriminatory. She maintains, however, that this reason was pretextual. "Pretext means a dishonest explanation, a lie rather than an oddity or an error." *Everroad v. Scott Trucking Sys., Inc.*, 604 F.3d 471, 479 (7th Cir. 2010) (internal quotation marks and citation omitted).

13

The fact that a plaintiff must show that the employer's given reason for the challenged action was a pretext for discrimination does not mean that the plaintiff "ha[s] to provide direct evidence of a discriminatory motive[,] as such a burden would deflate the significance of the *McDonnell Douglas* indirect method." *Greene v. Potter*, 557 F.3d 765, 769 (7th Cir. 2009). In other words, a plaintiff does not have to prove "pretext plus." *See, e.g., Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1045 (7th Cir. 1999). "A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit though it does not require the trier of fact to conclude that the employer unlawfully discriminated." *Greene*, 557 F.3d at 769 (internal quotation marks and citation omitted).

The Seventh Circuit has noted that when a "plaintiff argues that an employer's discipline is meted out in an uneven manner, the 'legitimate expectations' inquiry dovetails with the 'pretext' question." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 n.8 (7th Cir. 2008). *See, e.g.*, *Rodgers v. White*, 657 F.3d 511, 520 (7th Cir. 2011) (finding that employee's evidence "establishing a *prima facie* case" by showing dissimilar discipline "also defeats the defendants' claim that their reasons for firing him were nonpretextual"); *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 833 (7th Cir. 2007); *Curry v. Menard, Inc.*, 270 F.3d 473, 479 (7th Cir. 2001) (collecting cases and noting that non-uniform discipline is an "inconsistency [that] creates a genuine issue of material fact as to whether [employer's] stated reason for discharging [employee] was a pretext for discrimination").

As the Court explained in the previous section, Baikie has presented evidence

from which a reasonable jury could conclude that she was disciplined before OPR conducted an investigation, unlike several officers of a different race who were accused of violating the same rule. She has also presented evidence from which a reasonable jury could conclude that she was subjected to a substantially more severe sanction than other officers of a different race against whom those allegations were sustained. The Court therefore concludes that Baikie's evidence that her behavior "was the same as [another employee's,] but that she suffered distinctly worse consequences, suffices to raise a genuine issue of fact on the issue of pretext." *See Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 342 (7th Cir. 2001).

Thus, because Baikie has "offered enough evidence to allow a jury to conclude that [the DOC's] reason for disciplining her was pretextual, she is entitled to have a jury decide whether, in the final analysis, she was the victim of . . . discrimination." *Id*. The Court therefore denies defendants' motion for summary judgment on count one.

**B.    Due process**

Baikie argues that defendants violated her procedural due process rights by terminating her without affording her sufficient procedural protections. "A procedural due process violation occurs when (1) conduct by someone acting under the color of state law; (2) deprives the plaintiff of a protected property interest; (3) without due process of law." *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011). Whether Baikie "had a property interest in continued employment depends on state law." *Id*. "To show a legitimate expectation of continued employment under Illinois law that could support a due process claim, [Baikie] must point to a state law, an ordinance, a contract, or some

15

other understanding limiting the Sheriff's ability to discharge her." *Id*.

In *Redd*, the Seventh Circuit considered the case of a DOC officer who resigned during her probationary period after being accused of violating several rules. The officer claimed that the department violated her procedural due process rights. The court found this claim "deceptively easy" to resolve in light of the "well-settled [proposition] that probationary public employees do not possess a property interest[] in continued employment and thus have no right to procedural due process before their employment may be terminated." *Id*. The court noted that its inquiry was somewhat complicated, however, because "a municipality can provide greater protection for its employees if it sees fit to do so by enacting rules and regulations" that constitute a "clear policy statement." *Id*. (internal quotation marks and citations omitted).

In the final analysis, the court in *Redd* concluded that even if the plaintiff "could show a promise that certain procedures would be available to her before termination, it is well established that such procedural protections under state law do not provide the substantive restrictions on the employer's discretion that would be needed to establish a federally protected property interest in continued employment." *Id*. at 299. The court therefore concluded that language from Redd's employment agreement and several general orders did not amount to a "clear policy statement" and granted summary judgment in favor of the defendants on the plaintiff's due process claim.

Baikie contends that the "general orders and OPR policies indicate that employees accused of misconduct have the right to an investigation before they are disciplined," a right she was denied because her termination came before the

16

investigation began. Pl.'s Resp. at 17. She also appears to argue that because she would have become a non-probationary employee on the day after she was terminated, her due process rights were violated when the investigation that occurred after her termination did not afford her the process that would a full employee would have received. She maintains that *Redd* does not foreclose her claim because it "did not address the issue of whether or not 55 ILCS 5/3-7012 applied to probationary employees, or the legitimate expectation of continued employment provided by G.O. 4.1 and the standing policies for OPR investigations." *Id*. at 18.

The statute Baikie cites states: "*Except as is otherwise provided in this Division* [meaning section 5/3-7 of chapter 55 of the Illinois code], no . . . county corrections officer . . . shall be removed" except for cause with a hearing. 55 ILCS 5/3-7012 (emphasis added). In the same "division," however, 55 ILCS 5/3-7008 provides that "[a]ll appointees shall serve a probationary period of 12 months and during that period may be discharged at the will of the Sheriff." The statute therefore does not help Baikie. And as defendants point out, the court in *Redd* specifically rejected a contention that General Order 4.1 provided a basis for a constitutional due process claim. The court noted that the plaintiff had maintained that General Order 4.1 "'specified' that probationary employees accused of misconduct had the 'right' to an investigation before they were disciplined." The court concluded, however, that "[t]he language of General Order 4.1," which deals with "how complaints, internal investigations, and disciplinary actions within the department should be conducted, . . . does not support her contention." *Redd*, 663 F.3d at 298.

Although Baikie attempts to distinguish her case from *Redd* by noting that she was fired but Redd resigned, she provides no support for the proposition that this is a material distinction for purposes of her due process claim. Moreover, although it is arguably somewhat odd that the DOC conducted an investigation and recommended termination after Baikie had already been terminated, that does not mean that she possessed a property right in her continued employment. At the time that Baikie was terminated, she had no federally protected right to more process than she received.

For these reasons, the Court grants summary judgment in favor of defendants on count two.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment as to count two but denies the motion as to counts one and three [docket no. 31]. The case is set for a status hearing on April 9, 2012 at 8:30 a.m. in chambers (Room 2188) to set a trial date and discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 29, 2012